IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CHRISTOPHER MICHAEL ANDERSON,

    Plaintiff,

vs.                                Case No. 4:06cv4-SPM/WCS

SERGEANT GENE CHILDS,
JASON TYUS, THOMAS MCCOY,
AND CAPTAIN JOHN DOE,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Defendant McCoy[1] filed a motion to dismiss, doc. 31, asserting that Plaintiff did not properly exhaust administrative remedies. Plaintiff, a *pro se* inmate, was provided an opportunity to respond to the arguments raised in that motion, doc. 32, and his response was filed on October 30, 2006. Doc. 35.

---

[1] Defendant McCoy is one of three named Defendants, and one John Doe Defendant. Doc. 16 (amended complaint). Service has not yet been completed on the other two named Defendants as unexecuted summons were returned for Defendants Tyus and Childs. Docs. 27 and 28 respectively. Service has, however, been redirected. Doc. 29.

Plaintiff alleges that on January 31, 2005, while housed at Apalachee Correctional Institution, a disturbance broke out on the recreational yard. Doc. 16, p. 8. Plaintiff claims that he and other inmates were attempting to move away from the riot. *Id.*, at 9. Plaintiff asserts that he was not involved in the riot, but was simply in the "general area where this disturbance broke out." *Id.* Plaintiff alleges that while he was trying to move away, Defendant Tyus grabbed him "around the neck from behind and started choking Plaintiff, stopping him from breathing." *Id.* Plaintiff asserts that Defendant Childs then came towards him and hit him on the right side of his face and head with a hand-held radio while Defendant Tyus was still choking him. *Id.* Plaintiff claims that Defendant Childs hit him six or seven times with the radio until Plaintiff lost consciousness. *Id.*

Plaintiff further alleges that when he awoke, he was lying face down on the ground with his hands handcuffed behind his back and Defendant Tyus was hitting his head against the concrete floor. *Id.*, at 9. Plaintiff states that Defendant Childs continued to hit him with a closed fist on the back of his head and was shouting obscenities at Plaintiff. *Id.*

After Plaintiff was taken off the recreation yard by Defendant McCoy and another officer whose identity is unknown, Plaintiff was directed to sit on a bench in a waiting area. *Id.*, at 10. While waiting there, Defendant McCoy and the other officer allegedly said something to the effect of, "These inmates are all pieces of s---," and this is why we "deal with them as pieces of s---." *Id.* Defendant McCoy then slapped Plaintiff in the face with his open hand and "kicked Plaintiff in the forehead causing his head to slam backwards against the brick wall." *Id.*

Case No. 4:06cv4-SPM/WCS

Plaintiff contends that the uses of force were greater than justified under the circumstances and violated his Eighth Amendment rights. *Id.*, at 9-11. Plaintiff states that the Defendants' actions were unreasonable and done maliciously and sadistically for the purpose of causing him harm. *Id.*, at 11.

**Plaintiff's grievances, doc. 31, attachment**

Plaintiff initially filed a grievance to the Warden in March, 2005.[2] Doc. 31, attachment. Plaintiff complained that during the January 31st riot, Sergeant Childs and *McCoy* attacked him for unknown reasons. *Id.*, at 2. The grievance does not mention any assault by McCoy at a later point while sitting on a bench. The response, dated March 23, 2005, returned the grievance without processing because it was not filed at the location where Plaintiff was then assigned. *Id.*, at 5. Thus, Plaintiff was directed to resubmit the grievance at his present location. *Id.*

On April 3rd, Plaintiff sent a formal grievance to the assistant warden stated that he had filed the grievance previously and was resubmitting it in accordance with the instructions on the response. *Id.*, at 6. The grievance resubmitted appears to be identical to the one previously returned and alleged that Sergeant McCoy and Sergeant Childs grabbed Plaintiff on January 31, 2005, and attacked him. *Id.*, at 7. It did not mention the later assault by McCoy. The response to Plaintiff's grievance, dated April 6, 2005, stated that his complaint was referred to the Inspector General's office for "appropriate action." *Id.*, at 10. Therefore, the response concluded by stating that

---

[2] Although the first page of the grievance is not legible online, the second page of the grievance contains a legible "statement of facts." Doc. 31, attachment. Additionally, the bottom section of the grievance is legible and reveals it was received from Plaintiff on March 21, 2005, and mailed on March 24th. *Id.*, at 1. The last page of that grievance indicates Plaintiff signed it on March 15th. *Id.*, at 4.

Case No. 4:06cv4-SPM/WCS

Plaintiff could consider his "request for administrative remedy approved from that standpoint." *Id.*

Also attached to Defendant's motion is the first page from the case summary from the investigation. Doc. 31, attachment, p. 11. That document indicates the investigation concerned an incident date of January 31, 2005, the complainant was Plaintiff Christopher Anderson, it was assigned on April 5, 2005, to Michael Dalton, and the subjects of the investigation were Sergeant Thomas C. McCoy and Sergeant Larry G. Childs. *Id.*

The disposition comment states that the investigation was "downgraded" on April 7, 2005, because the "victim refuses to assist with investigation." *Id.* The narrative of the claims being investigated states:

> Inmate Anderson filed a formal grievance alleging that during a riot on January 31, 2005, Sgt. Childs and Sgt. McCoy attacked him. He claims that Sgt. McCoy grabbed him around the throat from behind while Sgt. Childs repeatedly struck him on the right side of his face with a radio. He claims that he was knocked unconsious [sic] and that he has witnesses that will state that these officers continued to beat him after he was unconsious [sic]. Ref: formal grievance log # 0504-205-036."

Doc. 31, p. 11.

On August 26, 2005, after the IG investigation had essentially been closed, Plaintiff filed a "notice of an amended statement" to the warden and said that it was in reference to 0504-205-036, the formal grievance referenced above from the investigation. *Id.*, at 12. Plaintiff said that the grievance had been approved from the standpoint that it was referred to the Inspector General's office, and Plaintiff attached a continuation sheet for the remainder of the facts. *Id.* That sheet stated that in his prior grievance, Plaintiff had named Sergeants Childs and McCoy "as the two officers who

attacked" him.  *Id.*, at 13.  Plaintiff stated, however, that after reviewing the reports from Apalachee Correctional Institution and his returning memory, he believed that Defendant McCoy was "inocent [sic] of any wrong doing towards" Plaintiff.  *Id.*  Plaintiff also stated that Sergeant Childs remained "guilty and the second officer who assisted in the attack on [Plaintiff] is Officer Jason Tyus."  *Id.*  Plaintiff stated that he was submitting the amended information so that it could "be referred to the Inspector General's Office so the continued conduction of the investigation can be correct and proper."  *Id.*  Plaintiff ended by apologizing for any inconvenience to Mr. McCoy."  *Id.*

      The response to Plaintiff, dated August 31, 2005, stated that the "subject of your grievance is currently being reviewed by the investigative section of the Office of the Inspector General."  *Id.*, at 14.  It further advised that a copy of Plaintiff's complaint would be forwarded to be "part of the current review."  *Id.*  The response then stated that because the investigation "process was initiated prior to the receipt of your Grievance, your request for action by this office is denied."  *Id.*  The response then gave the usual notice that further administrative review could be obtained by submitting an appeal to the Bureau of Inmate Grievance Appeals.  *Id.*

      On or about November 30, 2005, Plaintiff submitted a third formal grievance alleging that on January 31, 2005, after being restrained following an incident on the recreational yard, he was taken by "Sergeant Thomas McCoy and another unidentified officer, while still restrained [and] made to sit down on a wooden bench in the outter [sic] office."  *Id.*, at 15.  Plaintiff states that Sergeant McCoy slapped him and kicked him, and even screamed threats at Plaintiff, threatening to do more harm.  *Id.*  Plaintiff stated

Case No. 4:06cv4-SPM/WCS

that the grievance was "a partial amendment to grievance #504-205-036."[3] He further requested that the "amended information be forwarded to the Inspector General's Office for appropriate action" and to "be processed with on-going investigation surrouning [sic] incidents occuring [sic] on January 31, 2005, at Apalachee Correctional Institution." *Id.*, at 16.

The response to Plaintiff, dated December 7, 2005, incorrectly stated that the issue "was previously reported to the Office of the Inspector General for appropriate review and disposition, case #05-1-909." *Id.*, at 17. The response said that "If the allegations are substantiated, appropriate action will be administered by the Office of the Inspector General." *Id.* The response concluded by stating, "As this issue was previously reported, your grievance is denied." *Id.* Again, advice was given as to how to appeal that decision. *Id.*

**Defendant's Arguments, doc. 31**

Defendant McCoy asserts that Plaintiff "failed to *properly* exhaust his administrative remedies . . . ." Doc. 31, p. 6. Defendant acknowledges that Plaintiff initially filed a grievance about the January 31st recreational yard incident, but contends that Plaintiff did not submit the allegations about Defendant McCoy until approximately ten months after the incident. *Id.*, at 8. It was not until he submitted the grievance with the "amended information," that Plaintiff brought this claim forward. In that November 30th grievance, Plaintiff requested the Warden forward this new claim to the Inspector General's Office so that it could be investigated along with the incident he had reported

---

[3] Grievance #504-205-036 is the grievance which was forwarded to the Inspector General's office and initiated the investigation. Doc. 31, attachment, p. 10.

previously (i.e., the use of force on the recreational yard by Defendants Tyus and Childs).  *Id.*, at 8.  Plaintiff's grievance was denied, and Defendant McCoy contends the Warden's response to Plaintiff's grievance "incorrectly stated to plaintiff that the claim he was now raising in the grievance had previously been forwarded to the Inspector General's office for review in case #05-1-0909."  *Id.*, at 9.  Defendant argues that Plaintiff knew that this was a new claim not part of the original claim and, thus, Defendant contends Plaintiff should have appealed "the Warden's erroneous decision . . . ."  Doc. 31, pp. 10, 14.  Defendant contends that the grievance rules require an inmate to continue to the next step of the grievance process when the "inmate feels that the grievance has not been satisfactorily resolved during the formal grievance procedure . . . ."  Doc. 31, p. 9, *citing* FLA. ADMIN. CODE R. 33-103.007(1).  Defendant argues that:

> Plaintiff could not have felt that his grievance regarding his new claim that Defendant McCoy slapped and kicked him near the Captain's office was 'satisfactorily resolved during the formal grievance procedure' as he had asked for the new claim to be forwarded to the Inspector General's office to be reviewed with his prior claim, but the Warden denied his request and mistakenly stated that the claim was the claim that had been previously sent to the Inspector General.

Doc. 31, p. 10.  Defendant contends it is evident that Plaintiff was not satisfied with the response because he filed this civil rights case just a month later.  *Id.*  Defendant further argues that had Plaintiff submitted a grievance appeal to Central Office, the Department would have had "the opportunity to review the claim, correct the Warden's mistake, and refer the claim to the Inspector General's office if necessary."  *Id.*  Defendant further claims that Plaintiff's failure to appeal has "deprived the Department and Defendant McCoy from preserving information that is now lost due to the passage of time and fading memories."  *Id.*, at 11.

Case No. 4:06cv4-SPM/WCS

**Plaintiff's response, doc. 35**

Plaintiff states that although the Inspector's investigation was downgraded because he allegedly did not cooperate, he contends that nobody "attempted to contact him for assistance in said investigation." Doc. 35, p. 2. He asserts that was a misuse of authority. More to the point, Plaintiff contends that when the Warden responded to his November 30th amended statement information by stating, "If the allegations are substantiated, appropriate action will be administered," Plaintiff was led to believe "that although the grievance was denied, the relief in which he sought was granted." Id., at 5. Plaintiff argues that he could not tell from the Warden's response that relief was not being given. Id. Plaintiff asks the Court to "consider the totality of the circumstances surrounding this issue when ruling on Defendant's motion to dismiss." Id.

**Analysis**

With passage of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement of § 1997e(a) is mandatory and there is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. Alexander v. Hawk, 159 F.3d 1321, 1324-26 (11th Cir. 1998); see also Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.");

Case No. 4:06cv4-SPM/WCS

Higginbottom v. Carter, 223 F.3d 1259, 1260-61 (11th Cir. 2000) (holding that an excessive force claim is subject to the exhaustion requirement); Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons). Furthermore, this Court may not consider the adequacy or futility of administrative remedies, but only the availability of such. Higginbottom, 223 F.3d at 1261, *citing* Alexander, 159 F.3d at 1323. Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively. Booth v. Churner, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001). Moreover, *proper* exhaustion[4] is required under § 1997e(a); proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system [could] function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, — U.S. —, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

A prisoner must, therefore, comply with the process set forth and established by the grievance procedures. *See* Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999). Failure to exhaust available administrative remedies is the functional equivalent of failing to state a claim, and thus should be counted as a strike under 28 U.S.C. §

---

[4] The Court also noted: "Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims." Woodford v. Ngo, 126 S.Ct. at 2385.

1915(g).  *See* Rivera v. Allin, 144 F.3d 719, 731 (11th Cir.), *cert. denied* 524 U.S. 978 (1998) (stating that "[a] claim that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.").  "Accordingly, we join other circuits in concluding that under section 1915(g), federal courts may properly count as strikes lawsuits or appeals dismissed as frivolous, malicious or failing to state a claim upon which relief may be granted prior to April 26, 1996."  Rivera, 144 F.3d at 730(citations omitted).  However, if one claim is unexhausted, the Court may separate that claim out and proceed on only those claims that have been exhausted.  Brown, 212 F.3d at 1206, n.1.

There are two possibilities for finding Plaintiff exhausted administrative remedies in this case concerning his claim against Defendant McCoy.  The first is that when Plaintiff submitted his first grievance, he named Defendant McCoy as someone who assaulted him.  That grievance was accepted and an investigation begun.  But the first grievance did not mention the second alleged assault while Plaintiff was inside sitting on a bench.  It only concerned the assault on the yard.  The only way the first grievance might be considered to have exhausted administrative remedies as to that second claim is to find that the IG investigation probably would have uncovered this second alleged assault, assuming for the moment that Plaintiff is correct that he was never interviewed.  That assumption is not warranted.  Plaintiff did not mention the assault on the bench in the first grievance.  He did not mention it in the amendment to the first grievance filed on August 26, 2005.  Indeed, in that amendment, he said McCoy was innocent of "any wrong doing towards" himself.  It is highly improbable that Plaintiff would have accused McCoy of this second assault had he been interviewed by the Inspector General.  Thus,

the initial grievance, even as amended on August 26th, did not exhaust Plaintiff's claim concerning Defendant McCoy's alleged assault inside the waiting area on January 31st.

The second possibility is with the final grievance in which Plaintiff presented the "amended information." This grievance, on November 30th, did present Plaintiff's claims about Defendant McCoy. That information, however, was brand new information and Plaintiff was aware that he had never raised the claim or presented those allegations before. Accordingly, when Plaintiff received the response to his grievance that the matter "was *previously* reported to the Office of the Inspector General," Plaintiff knew or should have known that this was wrong. It does not matter that Plaintiff may not have known that the IG inspection was over. It is Plaintiff's responsibility to keep track of his claims. Plaintiff had the responsibility to alert the Department to the error by taking an appeal so that his new claim could have been considered by prison officials. The failure to appeal this error was a failure to exhaust administrative remedies as to the new claim against McCoy. That claim should be dismissed.[5]

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant McCoy's motion to dismiss, doc. 31, be **GRANTED** and that Plaintiff's claim against Defendant McCoy be dismissed for failure to exhaust administrative remedies pursuant

---

[5] Although Defendant argues it should be dismissed with prejudice, that invitation should be denied. Defendant presents no legal authority for forever barring Plaintiff's claim on the exhaustion doctrine of § 1997e(a).

Case No. 4:06cv4-SPM/WCS

to 42 U.S.C. § 1997(e) and the case be **REMANDED** to the undersigned for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on November 13, 2006.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 4:06cv4-SPM/WCS