IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


CHRISTOPHER MICHAEL ANDERSON,

    Plaintiff,

vs.                                Case No. 4:06cv4-SPM/WCS

SERGEANT GENE CHILDS,
JASON TYUS, and CAPTAIN JOHN DOE,

    Defendants.

                                            /

## SECOND REPORT AND RECOMMENDATION

Defendant Tyus filed a motion for summary judgment raising Heck v. Humphrey, 512 U.S. 477 (1994), and Edwards v. Balisok, 520 U.S. 641 (1997) as a bar to this case. Doc. 41. The *pro se* Plaintiff filed a response. Doc. 47. The motion is ready for a ruling.

**Procedural Issues**

Plaintiff's complaint brought claims against three named Defendants, Childs, Tyus, and McCoy, and one John Doe Defendant. There is only one active Defendant in this case at this time, Defendant Tyus.

Service was executed on Defendant Sergeant McCoy, doc. 23, who filed a motion to dismiss for failure to exhaust administrative remedies. Doc. 31. The motion was granted and the claims against Defendant McCoy were dismissed. Docs. 36, 39.

The John Doe Defendant has never been identified or served.

Service has twice been returned unexecuted on Defendant Childs. Docs. 28, 38.[1]

Service was executed as to Defendant Tyus, doc. 37, who was subsequently given leave to file the instant motion for summary judgment. Docs. 40, 43. Plaintiff had requested to amend his complaint after reviewing the arguments presented by Defendant Tyus, doc. 44, but Plaintiff's motion was denied, in part, because he did not submit a copy of the proposed amended complaint. N.D. Fla. Loc. R. 15.1.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. Id. An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material

---

[1] The Department of Corrections provided the last known address of Sergeant Childs under seal, but no one was living in the residence on November 3, 2006, when the Marshal attempted service of process. Docs. 34 and 38.

facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986). All reasonable inferences must be resolved in the light most favorable to the nonmoving party. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

**Defendant's statement of facts and evidence, doc. 41**

On January 31, 2005, an inmate reported to correctional officers on the recreation yard at Apalachee C.I. that he was in fear from inmate Huggins, who was believed to be carrying a "shank," a homemade knife. Doc. 41, p. 3; doc. 41, ex. A. When officers attempted to approach Huggins to handcuff him, the inmate hit one of the

officers and fled.  *Id.*  The inmate was caught and taken down to the ground, stabbing one of the officers with his shank.  *Id.*  Huggins was finally restrained and officers began trying to clear the recreation yard.  *Id.*

While the prisoners were being lined up according to dormitory assignment, inmate Washington loudly yelled to other inmates, encouraging them to refuse to comply with the officers' orders.  Doc. 41, pp. 3-4.  Washington then approached an officer and struck him in the head with his closed fist.  *Id.*, at 4; doc. 41, ex. B.  When officers tried to restrain Washington, he resisted and hit another officer in the head with his fist.  *Id.*  Several other inmates then began hitting Officer Johnson in the head.  *Id.*

Plaintiff joined in the fray and hit Sergeant Childs on the right side of his head, above his ear, with his closed fist.  Doc. 41, p. 4; doc. 41, ex. B.  Childs was able to grab Plaintiff "around his upper body area with both [his] hands and with the mimiamal [sic] amount of force necessary, forced him down onto the ground in a chest down position, with" the officer on Plaintiff's back.  Doc. 41, p. 4; doc. 41, ex. B.  Defendant Tyus arrived and handcuffed Plaintiff.  *Id.*  After being restrained, Plaintiff was assisted to a standing position, and escorted off the recreational yard by other correctional officers.  *Id.*  During this time, several other inmates were attacking other correctional officers.  Doc. 41, p. 4.

Later that day, Plaintiff was given a disciplinary report and charged with having punched Sergeant Childs in the head.  Doc. 41, p. 4; Doc. 41, ex. C.  Plaintiff pleaded not guilty, but was found guilty of unarmed assault by the disciplinary hearing team.  *Id.*  Plaintiff was punished with 60 days in disciplinary confinement and 36 days of gain time was forfeited.  *Id.*; *see also* doc. 41, ex. D.

Plaintiff was also criminally charged with battery on a law enforcement officer, that is, intentionally striking Childs while he was engaged in the lawful performance of his duty.  Doc. 41, p. 5; doc. 41, ex. F.  On October 11, 2005, Plaintiff entered a guilty plea and was adjudicated guilty of the battery on Sergeant Childs.  *Id.*  The guilty plea colloquy, and the statement of facts that presumably would have accompanied a guilty plea, is not in this record.

**Plaintiff's statement of facts and evidence, doc. 47**

Plaintiff declares under penalty of perjury that the facts stated in his civil rights complaint are true and correct.  Doc. 47, ex. H.  Plaintiff states in his amended complaint that on January 31, 2005, while housed at Apalachee Correctional Institution, a disturbance broke out on the recreational yard.  Doc. 16, p. 7 (p. 8 on the electronic docket).  Plaintiff was on the yard and claimed that he and a number of other inmates were attempting to move away from the riot.  *Id.*, p. 7.A. (p. 9 on the electronic docket).  Plaintiff asserts that he was not involved in the riot, but was simply in the "general area where this disturbance broke out."  *Id.*  Plaintiff alleges that as he was trying to move away, Defendant Tyus grabbed him "around the neck from behind and started choking Plaintiff, stopping him from breathing."  *Id.*

Plaintiff alleges that Defendant Childs then came towards Plaintiff and hit him on the right side of his face and head with a hand-held radio, even while Defendant Tyus was still choking him.  *Id.*  Plaintiff claims that Defendant Childs hit him six or seven times with the radio until Plaintiff lost consciousness.  *Id.*  Plaintiff asserts that after he lost consciousness, and while he was handcuffed, Tyus and Childs continuously hit and kicked him.  *Id*.

When Plaintiff awoke, he alleges that he was lying face down on the ground with his hands handcuffed behind his back.  *Id.*  Plaintiff alleges that Defendant Tyus was hitting Plaintiff's head on the concrete floor while Defendant Childs continued to hit him with a closed fist on the back of his head and was shouting obscenities at Plaintiff.  *Id.*

Plaintiff alleges that after he was taken off the recreation yard by Defendant McCoy and an unknown officer, he was directed to sit on a bench in a waiting area.  *Id.*, p. 7.B. (p. 10 on the electronic docket).  Defendant McCoy and the other officer said, "These inmates are all pieces of s---," and this is why we "deal with them as pieces of s---."  *Id.*  Defendant McCoy then slapped Plaintiff in the face with his open hand and "kicked Plaintiff in the forehead causing his head to slam backwards against the brick wall."  *Id.*

Plaintiff has also filed an affidavit by inmate David Duquette.  Duquette states that correctional officers rushed in to quell the disturbance and used physical force to have the inmates lay on the ground.  Doc. 47, ex. C.  Inmate Duquette personally observed the events on the recreational yard and was only five to ten feet away from Plaintiff.  *Id.*  He avers that Defendant Tyus grabbed Plaintiff around the neck and Defendant Childs struck Plaintiff in the head and face with a walkie talkie.  *Id.*  Plaintiff did not appear to be resisting, but was beaten by Defendants Tyus and Childs.  *Id.*  Even while lying on the ground in handcuffs, Plaintiff was hit by Defendant Tyus and Childs.  Doc. 47, ex. C.  When Plaintiff was escorted off the recreational yard, his face was "covered in blood."  *Id.*

Inmate Vernon Donaldson states that he was also on the recreation yard when the "minor disturbance broke out . . . ."  Doc. 47, ex. D.  As staff ordered the inmates to

"move back," they approached and "applied force in order to have 'some' inmates get down on the ground." *Id.*  Plaintiff was grabbed from behind and the officer hit him "in the face and/or head area with a 'walkie talkie' or 'radio.' "  *Id.*  Plaintiff "did not look to be fighting back" and he observed Plaintiff fall "down on the ground."  *Id.*

Inmate Christopher Schalk also provided an affidavit.  Doc. 47, ex. E.  Following the disturbance on the recreational yard, inmate Schalk was escorted to the Captain's Office.  *Id.*  He was seated on a bench when Plaintiff was escorted in by Sergeant McCoy.  *Id.*  Plaintiff "was at the time bleed from the right side of his face and head."  *Id.*  Plaintiff was in handcuffs and complied with an order to sit on the bench to the left of inmate Schalk.  *Id.*  Captain Sheely and Sergeant McCoy "approached the Plaintiff and stood directly in front of Plaintiff while saying something" that inmate Schalk could not hear.  *Id.*  Schalk avers that McCoy "hit Plaintiff in the face with his hand open and kicked Plaintiff in the head or face," but Schalk was "not sure where that blow landed."  *Id.*  As other staff members entered the office, Captain Sheely and Sergeant McCoy walked away.  *Id.*

Inmate Jasper Washington states in his affidavit that following the riot, he was escorted off the recreation yard and placed in an administrative confinement cell in Q-dorm.  Doc. 47, ex. F.  A short time later he saw Plaintiff being brought into Q-dorm.  *Id.*  Plaintiff's "face and head were [sic] covered in blood and tremendously swollen."  *Id.*  At some unspecified time later, Plaintiff was put in a room with inmate Washington.  *Id.*  He

could see the injuries to Plaintiff's forehead and face.[2]  *Id.*  Plaintiff told inmate Washington that "some officers had jumped on him."  *Id.*

**Analysis**

The sole issue to be addressed in ruling on the motion for summary judgment is whether Plaintiff's action is cognizable under 42 U.S.C. § 1983.  Defendant Tyus contends it is not because the claims call "into question the validity of his disciplinary and criminal convictions."  Doc. 41, p. 5.

In Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994), the United States Supreme Court held that a civil rights action under § 1983 that necessarily calls into question the validity of a conviction or sentence could not accrue until the plaintiff could demonstrate that the conviction or sentence had been reversed, expunged, or otherwise declared invalid.  Heck, at 487, 114 S.Ct. at 2372.  The rule of Heck has been extended and made explicitly applicable in the prison disciplinary setting.  Edwards v. Balisok, 520 U.S. 641, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997).  In Balisok, the Supreme Court held that a "conviction" includes a finding of guilty in a prison disciplinary proceeding that results in a loss of gaintime, thus, affecting an inmate's period of incarceration.  117 S. Ct. at 1589.  Therefore, a claim for money damages relating to prison disciplinary proceedings which result in the loss of gaintime credits is not cognizable under § 1983.

---

[2] Inmate Nakia Huggins also provided an affidavit attesting to Plaintiff's injuries. Doc. 47, ex. G.  He saw Plaintiff's face bleeding profusely, covered in blood, and said that Plaintiff had a black eye.  *Id.*

Although Heck generally requires a "favorable termination" requirement for a Plaintiff to be successful in a § 1983 action, *see* Uboh v. Reno, 141 F.3d 1000, 1004-06 (11th Cir. 1998), there are also situations which permit claims to go forward because they will not necessarily invalidate a conviction. Dyer v. Lee, 488 F.3d 876 (11th Cir., 2007).

In Dyer v. Lee, Dyer was arrested for driving while intoxicated. She was handcuffed with her hands behind her back, despite having requested that her hands be cuffed in front due to an arm injury. 488 F.3d at 877. Dyer apparently would not be quiet so that the officer could read her Florida's implied consent notice, and an officer put his hand over Ms. Dyer's mouth. *Id.*, at 878. She kicked the officer in the leg. *Id.* She was then placed in the back of a patrol car and told she was under arrest for battery on a police officer. *Id.*

A short time later, an officer noticed that Dyer had been able to move "her cuffed hands from behind her back to her front, to ease the pain in her arms." *Id.* She was allegedly pulled out of the patrol car, shoved against the car, her hand was slammed on the car, she was kneed in the leg and lower back, sprayed with pepper spray, and an unauthorized cuffing technique[3] was used upon her. *Id.* After being put back in the car, with the altercation over, an officer "opened the door to the patrol car and again sprayed Dyer with pepper spray." *Id.* Dyer was initially charged with DUI and three counts of battery on a law enforcement officer, but after dropping the DUI, another count of

---

[3] This technique involved putting the "cuffs around both wrists, with one wrist on top of the other." 488 F.3d at 878.

resisting arrest with violence was added. *Id.* She pleaded no contest to a single charge of resisting with violence.[4]

Dyer brought suit claiming excessive force was used during her arrest. *Id.*, at 878. The district court granted defendants' summary judgment motion finding the suit barred by Heck v. Humphrey. *Id.* The Eleventh Circuit reversed. The Court concluded that the use of excessive force on Dyer would "not necessarily make Dyer's arrest unlawful, particularly for the DUI and battery charges." *Id.*, at 879. Defendants had argued that by pleading guilty to resisting arrest with violence, the plaintiff could not later "say that her resistence was justified, which it would have been if the defendants used excessive force." *Id.* The Court rejected that argument and noted that Heck's "logical necessity" was absent because there still existed "a construction of the facts that would allow the underlying conviction to stand." *Id.*, at 879-80. "In other words, as long as it is possible that a § 1983 suit would not negate the underlying conviction, then the suit is not Heck-barred." Dyer, 488 F.3d at 879-80. The Court in Dyer cited the following cases to emphasize "the importance of logical necessity and the limited scope of the Heck holding."

> *See, e.g.*, Thore v. Howe, 466 F.3d 173, 180 (1st Cir. 2006) ("A § 1983 excessive force claim brought against a police officer that arises out of the officer's use of force during an arrest does not necessarily call into question the validity of an underlying state conviction [of assault on a police officer] and so is not barred by *Heck*."); VanGilder v. Baker, 435 F.3d 689, 692 (7th Cir. 2006) (holding that a successful § 1983 suit for excessive force would not imply the invalidity of the underlying conviction for resisting a law enforcement officer); Smith v. City of Hemet, 394 F.3d 689, 698 (9th Cir. 2005) (*en banc*) (holding that *Heck* does not bar § 1983 suit because conviction for resisting arrest could stand based on pre-arrest acts of resistance, and thus the fact that arrest may have been

---

[4] Due to a subsequent parole violation, the verdict was changed to guilty.

> unlawful due to excessive force did not negate the underlying conviction); Sanford v. Motts, 258 F.3d 1117, 1119 (9th Cir. 2001) (holding that *Heck* does not bar § 1983 suit because record did not clearly establish whether excessive force took place during, or after, the arrest); Martinez v. City of Albuquerque, 184 F.3d 1123, 1125 (10th Cir. 1999) (holding that *Heck* does not bar § 1983 suit because the record did not rule out that plaintiff could have been convicted for offenses prior to arrest, and that, even if he were not, jury could find under New Mexico law that "police officers effectuated a lawful arrest . . . in an unlawful manner," thus not negating underlying conviction); Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997) (holding that *Heck* does not bar § 1983 suit because a finding of excessive force would not necessarily imply that arrest was unlawful under Pennsylvania law). *But see* Hainze v. Richards, 207 F.3d 795, 798 (5th Cir. 2000) (holding that a § 1983 claim for excessive force "is barred as a matter of law if brought by an individual convicted of aggravated assault related to the same events").

488 F.3d at 881.

Thus, if the claim is not on a collision course with habeas, it is not barred. Dyer, 488 F.3d at 880. An example of a claim clearly barred would be if to succeed on his claim, the plaintiff "would have to negate an element of the offense of which he has been convicted." *Id.*, at 879, *quoting* Heck, 512 U.S. at 487, n.6.

The case at bar illustrates the difficulties that arise from assault and use of force cases. Such cases, like this one, concerns events occurring over a period of time. That which violates no constitutional rights at one point might violate the constitution moments later.

Plaintiff asserts that at the outset of the riot he was not involved, and this must be assumed to be true on this motion for summary judgment. However, he was found guilty both in a prison disciplinary and criminal proceedings of striking Sergeant Childs without justification. Whatever the truth of the way in which Plaintiff, Childs, and Tyus interacted initially, the die is cast for Plaintiff: he struck Childs without justification. Plaintiff cannot attempt to prove otherwise in this case. To allow Plaintiff to prove his

version of events, that he was restrained by Tyus in a chokehold and beaten by Childs and Tyus, and that he did not strike Childs without justification, would necessarily imply the invalidity of the disciplinary action taken against him and his criminal conviction.

The Heck bar ends, however, when Plaintiff lost consciousness or was restrained by handcuffs, and perhaps earlier, if the force used by Defendant Tyus was not reasonably necessary when it was used.  Even though Plaintiff assaulted Childs without justification, to continue to beat and kick Plaintiff after he no longer was any possible threat to any officer would be a discrete violation of Plaintiff's Eighth Amendment rights. The use of force unnecessarily and maliciously for the very purpose of causing harm is a violation of the Eighth Amendment.  Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987); Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005).  Proof of such a claim would not necessarily imply the invalidity of the conviction for assaulting Childs initially. Thus, while Plaintiff may not attempt to prove that he did not assault Childs without justification, he should be permitted to prove Eighth Amendment claims against Defendant Tyus arising after Plaintiff was no longer any threat to an officer or other prisoner.

Accordingly, it is **RECOMMENDED** that the motion for summary judgment filed by Defendant Tyus, doc. 41, be **GRANTED in part** and **DENIED in part** following the distinctions noted above, and the case **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on August 20, 2007.

 s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

Case 4:06cv4-SPM/WCS

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**