**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**CHRISTOPHER MICHAEL ANDERSON,**

      **Plaintiff,**

**vs.**                                                                    **Case No. 4:06cv4-SPM/WCS**

**JASON TYUS,**

      **Defendant.**

_____/

**FOURTH REPORT AND RECOMMENDATION**[1]

Defendant Tyus, the last remaining Defendant who was served in this case, filed

a second motion for summary judgment on June 16, 2008.  Doc. 91.  Plaintiff was

advised of his obligation to respond under Rule 56, doc. 92, and Plaintiff filed his

response on August 4, 2008.  Doc. 97.

---

[1] The first report and recommendation, which was adopted, dismissed Defendant McCoy for failure to exhausted administrative remedies.  Docs. 36, 39.  The second report and recommendation, also adopted, granted in part and denied in part the summary judgment motion filed by Defendant Tyus.  Docs. 60, 62.  That report and recommendation limits the claims that may proceed in this case.  Doc. 60, p. 12.  The third report and recommendation denied Plaintiff's motion to amend the complaint and dismissed the claims against the John Doe Defendant.  Docs. 98, 99.  Service was never executed as to Defendant Childs.  *See* doc. 98, p. 3, n.2.

This case concerns an alleged use of excessive force on an inmate by correctional officers.  Plaintiff, the inmate, is incarcerated within the Florida Department of Corrections and the events at issue here took place on January 31, 2005, at Apalachee Correctional Institution.  Doc. 16.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If accomplished, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted). Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

**Defendant's evidence, doc. 91**

On January 31, 2005, inmate Nakia Huggins attacked and stabbed a correctional officer on the recreational yard at Apalachee C.I.  Doc. 91, p. 3; Ex. B, excerpt from I.G. Investigation (doc. 91-4, p. 3).[2]  When correctional officers began trying to clear the area, a disturbance broke out between officers and inmates.  Doc. 91, p. 3; Defendant's Ex. B (doc. 91-4, p. 3).

Defendant Tyus was called to assist in subduing inmate Huggins and escorting him off the yard.  Doc. 91, p. 4; Defendant's Ex. A, Tyus Affidavit (doc. 91-3, p. 2). Huggins continued to be combative he was doused with chemical agents, and was finally forced onto the ground.  Doc. 91, p. 4; Defendant's Ex. A, Tyus Affidavit (doc. 91-3, p. 2).  Sergeant Silcox placed handcuffs on Huggins.  Defendant's Ex. G (doc. 91-9,

---

[2] Hereafter, all references to exhibits are to those attached to document 91, unless otherwise noted.  References are to the paper copy and page number, followed by a reference (in parenthesis) to the corresponding document and page in the electronic docket.  Both citations are referenced as a pro se litigant will not have access to the court's electronic docket.

p. 2).  Sergeant Silcox states in his affidavit that he and Sergeant Ragans escorted Huggins to the captain's office.  Defendant's Ex. G (doc. 91-9, p. 2).  Defendant Tyus assisted in escorting Huggins to the captain's office, and then was directed to report back to the yard to help clear the area.  Doc. 91, p. 4; Defendant's Ex. A, Tyus Affidavit (doc. 91-3, p. 2).

When Defendant Tyus came into the yard, he observed the prisoners standing in groups according to dormitory assignment, awaiting escort off the yard.  Doc. 91, p. 4; Defendant's Ex. A, Tyus Affidavit (doc. 91-3, p. 3); *see also* Defendant's Ex. B (doc. 91-4, p. 3).  Inmate Jasper Washington starting walking away from his designated area, yelling that the officers would "have to catch" him and defiantly stating, "I ain't cuffing up!"  Doc. 91, p. 4; Defendant's Ex. A, Tyus Affidavit (doc. 91-3, p. 3).  He was "actively attempting to incite a disturbance by loudly telling inmates to refuse to comply with staff orders."  Defendant's Ex. F (doc. 91-8, p. 2).  Inmate Washington took off his jacket, got into a boxing stance, and hit Officer Roger Bennett in the face.  Doc. 91, p. 4; Defendant's Ex. A, Tyus Affidavit (doc. 91-3, p. 3).  As Officer Bennett tried to restrain Washington, they both fell to the ground and other officers responded and assisted in restraining Washington.  Doc. 91, p. 4; Defendant's Ex. A, Tyus Affidavit (doc. 91-3, p. 3).

During the restraint of Washington, a riot-like atmosphere developed as other inmates began to attack the officers.  Doc. 91, p. 4; Defendant's Ex. A, Tyus Affidavit (doc. 91-3, p. 3).  As the officers were trying to handcuff Washington, "approximately twenty (20) inmates surrounded" the officers and began to hit and kick at the officers.  Defendant's Ex. E (doc. 91-7, p. 2).  Inmate Washington hit "Sergeant Ragans in the

back of the head with his closed fist."  Defendant's Ex. F (doc. 91-8, p. 2).  Several

prisoners struck Sergeant Childs in the back of the head with their fists.  Defendant's

Ex. A, Tyus Affidavit (doc. 91-3, p. 3).  Two other inmates struck Officer Bennett, and a

third inmate kicked Officer Bennett.  *Id.*  Sergeant McCoy was hit in the back of the

head.  *Id.*  Officer Johnson was attacked by three inmates.  Defendant's Ex. F (doc. 91-

8, p. 2).  Defendant Tyus was also attacked during this incident.  *Id.*  During these

attacks, Plaintiff hit Sergeant Childs "in the face with a closed fist."  Doc. 91, p. 4;

Defendant's Ex. A, Tyus Affidavit (doc. 91-3, p. 3).

Inmates began yelling and inciting other inmates to attack correctional officers.

Defendant's Ex. A, Tyus Affidavit (doc. 91-3, p. 3).  The officers were "greatly

outnumbered by the inmates who were present" on the recreational yard.  *Id.*  It was

critically important for order to be restored and the disturbance to be quelled because

the potential for serious injury was "great."  Defendant's Ex. A, Tyus Affidavit (doc. 91-3,

p. 3).  To subdue and restrain the inmates, officers would "immobilize the inmate

sufficiently to bring his hands together behind his back and fasten the handcuffs to each

wrist."  Doc. 91, p. 4; Defendant's Ex. A, Tyus Affidavit (doc. 91-3, pp. 3-4).  If an inmate

continued to struggle, "available officers will apply pressure by kneeling on the upper

back, forcing the head down and/or holding the shoulders down while other officers pull

the hands together behind the back and apply the cuffs."  Doc. 91, p. 4; Defendant's Ex.

A, Tyus Affidavit (doc. 91-3, p. 4).

Plaintiff hit Sergeant Childs on the right side of his head, above the ear, with his

closed fist.  Doc. 91, p. 4; Defendant's Ex. F (doc. 91-8, p. 2).  Sergeant Silcox grabbed

Plaintiff from behind, put his right arm around Plaintiff's neck and chest area, and pulled

him back.  Doc. 91, p. 4; Defendant's Ex. G (doc.91-9, p. 2).  Another inmate then struck Sergeant Silcox from behind and he lost his grip on Plaintiff.  Doc. 91, p. 4; Defendant's Ex. G (doc.91-9, p. 2).  Sergeant Childs then grabbed Plaintiff around his upper body and forced him to the ground, chest down.  Doc. 91, p. 4; Defendant's Ex. F (doc. 91-8, p. 2).  As Sergeant Childs was on top of Plaintiff, holding him on the ground and trying to restrain Plaintiff's upper torso, Defendant Tyus worked with Plaintiff's "lower arms and hands" to get Plaintiff handcuffed.  Doc. 91, p. 4; Defendant's Ex. A, Tyus Affidavit (doc. 91-3, p. 4); Defendant's Ex. G (doc. 91-8, p. 2).

Defendant Tyus "applied only the force necessary to bring his hands together and apply the handcuffs while he was restrained by Sergeant Childs on the ground." Doc. 91, p. 4; Defendant's ex. A, Tyus Affidavit (doc. 91-3, p. 4).  Defendant Tyus "did not punch, hit, kick, or slam" Plaintiff, nor did Defendant Tyus observe Sergeant Childs do so.  Doc. 91, p. 4; Defendant's ex. A, Tyus Affidavit (doc. 91-3, p. 4).  After being cuffed, Plaintiff was immediately brought to his feet and escorted off the recreational yard by two other officers.  Doc. 91, p. 4; Defendant's Ex. F (doc. 91-8, p. 3); Defendant's Ex. H (doc. 91-10, p. 4).  Defendant Childs left the area and went to the medical clinic for an "assessment noting swelling to left side of [his] jaw, left hand, left chest area, and abrasions to both knees."  Defendant's Ex. F (doc. 91-8, p. 3).

Plaintiff could not identify the officer who grabbed him from behind.  Doc. 91, p. 5; Ex. H (Plaintiff's deposition), (doc. 91-10, pp. 2-3).  Plaintiff passed out while the unidentified officer held him in a chokehold and does not know how he got on the ground.  Doc. 91, p. 5; Ex. H (doc. 91-10, pp. 3-4); Ex. I (Plaintiff's deposition), (doc. 91-11, p. 3).  Plaintiff remembers waking up on the ground, handcuffed, and was "still

Case No. 4:06cv4-SPM/WCS

getting beat."  Ex. H (doc. 91-10, p. 4).  Plaintiff said he was "getting choked at the same time [he] was getting hit."  Defendant's Ex. I (doc. 91-11, p. 2).  When Plaintiff came to, he was lying on his stomach, his hands "were handcuffed behind [his] back, and [his] head was turned" to the left with the right side of his fact resting on the concrete.  Defendant's Ex. I (doc. 91-11, p. 3).  Plaintiff said in his deposition that when he woke up in handcuffs, his "head was being slammed into the ground."  Defendant's Ex. I (doc. 91-11, p. 4).  Plaintiff further reported that "whoever was still behind [him] at the time was still hitting [him] in the back and stuff like that."  *Id.*  Plaintiff also recalled that an unidentified officer was "sitting on top of" him, holding him on the ground.  Doc. 91, p. 5; Ex. I (doc. 91-11, pp. 4-5).  Plaintiff was lifted up to this feet and escorted off the recreational yard by two officers he cannot identify.  Doc. 91, p. 5; Ex. I (doc. 91-11, p. 6).  Plaintiff testified in his deposition that he was basically basing his testimony on what was in the "incident reports" as to who was escorting him off the recreational yard, and does not know whether it is "true or not."  Defendant's Ex. I (doc. 91-11, p. 6).

The recreation yard "was eventually secured with 197 inmates detained and identified."  Ex. B (doc. 91-4, p. 3).  The correctional officers "sustained injuries ranging from superficial puncture wounds to non life-threatening lacerations, abrasions and contusions."  Defendant's ex. B (doc. 91-4, p. 3).  Plaintiff sustained superficial abrasions to his knees, an abrasion on the right scalp, facial contusions, and ecchymosis in the left eye.  Doc. 91, p. 5; Exhibit K, pp. K2-K4 (doc. 91-13, pp. 3-5).  Plaintiff also had superficial varices to his right and left upper thighs.  Doc. 91, p. 5; Exhibit K, pp. K2-K4 (doc. 91-13, pp. 3-5).  Subsequent x-rays of Plaintiff's facial area

were "normal."  Doc. 91, p. 5; Exhibit K, pp. K4, K8-K9 (doc. 91-13, pp. 5, 9-10); *see also* Plaintiff's ex. A. p. 9 (doc. 97-2, p. 9).

Plaintiff received a prison disciplinary report on January 31, 2005, for unarmed assault upon Officer Childs for his role in the riot.  Doc. 91, p. 5.  Plaintiff was found guilty, received 60 days in confinement, and forfeited 30 days of gain time.  *Id.*  State criminal charges were also brought against Plaintiff for the January 31, 2005, assault on Officer Childs.  Doc. 91, p. 5; Defendant's Ex. L (doc. 91-14, p. 2).  Plaintiff pleaded guilty and was convicted of battery on a law enforcement officer on July 1, 2005.  Doc. 91, p. 5; Exhibit L (doc. 91-14, p. 3).  A total of 101 inmates were transferred from Apalachee Correctional Institution to Florida State Prison as a result of the disturbance. Defendant's ex. B (doc. 91-4, p. 3).  "Twenty inmates were identified by staff as committing felonies against correctional officers and [were] considered for criminal prosecution," including Plaintiff.  *Id.*

### Plaintiff's evidence, doc. 97

In addition to submitting medical records, Plaintiff has also filed the affidavits of several inmate witnesses.  Plaintiff's exhibits B-G (doc. 97-2, pp. 16-33).  Defendant argues that these affidavits are merely "impeachment evidence," to impeach Defendant's version of what happened.  Plaintiff has the burden of proof and may call these witnesses to carry that burden.  This is not impeachment evidence.  Pursuant to FED. R. CIV. P. 56, an "affidavit must be made on personal knowledge, shall out facts that would be admissible in evidence . . . ."  FED. R. CIV. P. 56(e)(1).  Plaintiff's affidavit are made on personal knowledge.

Inmate William King states that he was present on the recreation yard on January 31, 2005, and was standing within "ten feet of Plaintiff." Plaintiff's Ex. B (doc. 97-2, p. 17). At approximately 10:30 a.m., a disturbance broke out "directly in front of where we were standing . . . ." Plaintiff's Ex. B (doc. 97-2, p. 17). Correctional officers and staff responded to the disturbance, and Plaintiff and inmate King "tried to move away from said disturbance." Plaintiff's Ex. B (doc. 97-2, p. 18). Staff rushed the inmates and applied force to have them "lay on the ground." *Id.* Inmate King testifies in his affidavit that Defendant Tyus grabbed "Plaintiff around the neck" and Sergeant Childs started striking Plaintiff "in the head and face with a walkie talkie/radio." *Id.* "Plaintiff did not appear to be resisting at all" but was still "beaten" even after Plaintiff "was unconscious and in handcuffs, laying face down on the ground." *Id.* Inmate King's sworn testimony is that "While Plaintiff was face down on the ground in handcuffs, I witnessed Defendant Jason Tyus striking his head on the ground, and Defendant Gene Childs was hitting Plaintiff with his closed fist in the back and head." *Id.* Plaintiff was then escorted from the recreation yard and inmate King "noticed Plaintiff's face covered in blood." *Id.*

Inmate David Duquette also provided an affidavit, stating he was also standing on the recreational yard approximately "five to ten feet away" from Plaintiff. Plaintiff's Ex. C (doc. 97-2, p. 20). The affidavit quotes verbatim the language used in inmate King's affidavit, and is identical in all respects. Plaintiff's Ex. C (doc. 97-2, pp. 20-22).

Inmate Vernon Donaldson avers that he was standing with his "back against the 'canteen perimeter fence' which is located in the northeast corner of the rec-yard.." Plaintiff's Ex. D (doc. 97-2, pp. 23-24). Staff ordered the inmates "to 'move back' which

was somewhat difficult for some, including myself, and Mr. Anderson (Plaintiff) due to the fact that we were in a crowd of bodies, with the 'canteen perimeter fence' mentioned above directly behind us."  Plaintiff's Ex. D (doc. 97-2, p. 24).  Inmate Donaldson avers that staff approached "and applied force in order to have 'some' inmates get down on the ground."  Plaintiff's Ex. D (doc. 97-2, p. 24).  He witnessed an officer grab Plaintiff from behind the neck and another officer approached Plaintiff and started "hitting him in the face and/or head area with a 'walkie talkie' or 'radio.' "  *Id.*  Inmate Donaldson, who was standing approximately 10 to 15 feet to the left of Plaintiff, was ordered to lie on the ground and the last thing he saw "was when Plaintiff fell down on the ground."  Plaintiff's Ex. D (doc. 97-2, p. 25).  Inmate Donaldson reports that later, when the inmates were being transferred on a bus to Florida State Prison, Plaintiff's "face and head were swollen and covered with blood."  Plaintiff's Ex. D (doc. 97-2, p. 25).[3]

Inmate Jasper Washington provided an affidavit stating that after the disturbance, he observed Plaintiff being brought into Q-dormitory and saw "Plaintiff's face and head were covered in blood and tremendously swollen."  Plaintiff's Ex. F (doc. 97-2, p. 30). After Plaintiff was "locked in" the shower, he was "placed in the room with" inmate Washington.  *Id.*  He could see Plaintiff had "severe" injuries and the skin on Plaintiff's face look similar to "an injury sustained in a motorcycle" accident.  *Id.*  Plaintiff's "head and face were swollen, and covered with lacerations, and blood."  *Id.*

---

[3]An affidavit by inmate Christopher Schalk concerns events which took place after the disturbance on the recreational yard, when the inmates were sitting on a bench outside the captain's office.  Plaintiff's Ex. E (doc. 97-2, p. 27).  Because those events do not involve Defendant Tyus, they will not be considered further.

Another affidavit submitted by Plaintiff is from inmate Huggins, who states that later in the day following the disturbance, the inmates were transferred by bus from Apalachee Correctional Institution.  Plaintiff's Ex. G (doc. 97-2, p. 32).  Plaintiff sat next to inmate Huggins and Plaintiff was "bleeding profusely from the face and head."  *Id.*  Plaintiff's "face was covered in blood," he had a black eye, and his face was "grotesquely swollen . . . ."  *Id.*

Plaintiff also submitted the emergency room record for Defendant Tyus as evidence.  Plaintiff's Ex. H (doc. 97-2, pp. 34-36).  Defendant Tyus had "slight swelling below [right] eye, abbrasion [sic] to [right] hand" at the first and second knuckle.  Plaintiff's Ex. H (doc. 97-2, pp. 35-36).

Finally, Plaintiff submitted his own affidavit stating that on January 31, 2005, he was "attacked by Defendants Childs and Tyus."  Plaintiff's Ex. I (doc. 97-2, p. 38).  Plaintiff testifies that he can personally identify Defendant Childs but acknowledges that "Defendant Tyus grabbed [him] from behind so [Plaintiff] did not see him."  Plaintiff's Ex. I (doc. 97-2, p. 38).

**Procedural Issues**

Defendant Tyus previously filed a motion for summary judgment.  Docs. 40, 41, and 43.  The motion was granted in part and denied in part.  Docs. 60, 62.  The issue was whether Plaintiff's claims were barred by Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994),[4] considering Plaintiff's criminal conviction and

---

[4] In Heck v. Humphrey, *supra*, the United States Supreme Court held that a civil rights action under § 1983 that necessarily calls into question the validity of a conviction or sentence could not accrue until the plaintiff could demonstrate that the conviction or sentence had been reversed, expunged, or otherwise declared invalid.  Heck, at 487,

disciplinary report.  Recognizing that there are situations which permit claims to go

forward because success would not necessarily invalidate a conviction, *citing* <u>Dyer v.

Lee</u>, 488 F.3d 876 (11th Cir., 2007), Plaintiff's case was permitted to proceed with a

clear line drawn to focus Plaintiff's claims and eliminate any possibility of undermining

Plaintiff's conviction or the finding of guilty in the prison disciplinary hearing.  Docs. 60,

62.  Plaintiff struck Sergeant Childs without justification, and he cannot attempt to claim

or prove otherwise in this § 1983 case as that would necessarily imply the invalidity of

those proceedings.  Docs. 60, 63.  However, the "<u>Heck</u> bar ends when Plaintiff lost

consciousness or was restrained by handcuffs, and perhaps earlier, if the force used by

Defendant Tyus was not reasonably necessary when it was used."  Doc. 60, p. 12.

Thus, Plaintiff's claims are limited to consideration of whether force was used by

Defendant Tyus reasonably to quell the disturbance, or whether it was used excessively

for the purpose of causing harm in violation of the Eighth Amendment.

**Analysis**

A claim that excessive and unnecessary force was used by correctional officers

is founded upon the Eighth Amendment and requires a showing of "unnecessary and

wanton infliction of pain."  <u>Whitley v. Albers</u>, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084,

89 L.Ed.2d 251 (1986).  Relevant to the inquiry will be "the need for the application of

force, the relationship between the need and the amount of force that was used, [and]

---

114 S.Ct. at 2372.  <u>Heck</u> has been extended and made explicitly applicable in the prison
disciplinary setting.  <u>Edwards v. Balisok</u>, 520 U.S. 641, 117 S. Ct. 1584, 137 L. Ed. 2d
906 (1997).  In <u>Balisok</u>, the Supreme Court held that a "conviction" includes a finding of
guilty in a prison disciplinary proceeding that results in a loss of gaintime, thus, affecting
an inmate's period of incarceration.  117 S. Ct. at 1589.

the extent of injury inflicted."  *Id.* at 320; *see e.g.*, <u>Williams v. Burton</u>, 943 F.2d 1572, 1575 (11th Cir. 1991).  Such a claim turns on whether or not "force was applied in a good faith effort to maintain or restore discipline or maliciously or sadistically for the very purpose of causing harm."  <u>Brown v. Smith</u>, 813 F.2d 1187, 1188 (11th Cir. 1987). "Where (as in <u>Whitley</u>) officials act in response to a prison disturbance, their actions are necessarily taken 'in haste, under pressure,' and balanced against 'competing institutional concerns for the safety of prison staff or other inmates.' "  <u>Wilson v. Seiter</u>, 501 U.S. 294, 302, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991), *quoting* <u>Whitley v. Albers</u>, *supra.*

"When jailers continue to use substantial force against a prisoner who has clearly stopped resisting - whether because he has decided to become compliant, he has been subdued, or he is otherwise incapacitated-that use of force is excessive."  <u>Danley v. Allen</u>, 540 F.3d 1298, 1309 (11th Cir. 2008), *citing* <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1272 (11th Cir. 2005).  The law is clear in that "[o]nce a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need."  <u>Danley</u>, 540 F.3d at 1309.  In 2002, the Eleventh Circuit denied a qualified immunity defense finding it was clearly established by at least 1998 that "it is unlawful to inflict a beating upon a prisoner in custody when he is incapacitated and no longer able to pose a threat to the guards' ability to maintain order, resist the guards' directions, or engage in disruptive behavior."  <u>Skrtich v. Thornton,</u> 280 F.3d 1295, 1303 (11th Cir. 2002).  "The use of force must stop when the need for it to maintain or restore discipline no longer exists."  <u>Skrtich v. Thornton</u>, 280 F.3d at 1304, *citing* <u>Whitley</u>, 475 U.S. at 320-21, 106 S.Ct. 1078.

Furthermore, while the absence of serious injury is relevant to an excessive force claim, that does not end the inquiry. Baldwin v. Stalder, 137 F.3d 836, 839 (5th Cir. 1998), *citing* Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992). In Hudson v. McMillian, the Court stated that "the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997), *quoting* Hudson, 503 U.S. at 10, 112 S. Ct. at 1000 (considering the "physical injury" requirement of the PLRA). "[T]he injury must be more than *de minimus*, but need not be significant." Siglar, 112 F.3d at 193.

As noted by the Supreme Court, "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it." 503 U.S. at 7, 112 S. Ct. at 999; *see also* Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996), *cert. denied* 520 U.S. 1257 (1997). This is only one part of the inquiry. If prison officials did not use force "in a good-faith effort to maintain or restore discipline," but did so "maliciously and sadistically to cause harm" *see* Hudson, 503 U.S. at 7, 112 S.Ct. at 999, an inmate presents a viable claim.

Defendant's evidence is that Defendant Tyus used "only the force necessary" to handcuff Plaintiff while he was restrained on the ground by Sergeant Childs. Defendant Tyus contends he "did not punch, hit, kick, or slam" Plaintiff, nor did he observe another office doing so. Defendant Tyus presented evidence that these events transpired during a riot-like prison disturbance, calling for quick action, and that immediately after Plaintiff was handcuffed, Plaintiff was brought to his feet and escorted off the

Case No. 4:06cv4-SPM/WCS

recreational yard.  Defendant has also presented evidence that inmates assaulted many correctional officers that day, and Plaintiff was convicted of assaulting Sergeant Childs. The temporal proximity of that assault on Childs and the efforts of Childs and Tyus to subdue Plaintiff is important.  It can be imagined that Childs and Tyus used significant force upon Plaintiff as a direct consequence of Plaintiff's assault upon Childs.  If all of Defendant's evidence is true, Defendant will prevail.

However, Plaintiff has presented contradictory evidence on the crucial issue in this case, whether force was applied maliciously afer the need for force had ceased. The issue is not whether Plaintiff was choked into unconsciousness in an attempt to subdue him.  That probably would be permissible if this use of force followed immediately upon Plaintiff's criminal assault upon Sergeant Childs and the officers were confronted with a riot.  But Plaintiff has presented evidence that while he was lying face down on the ground in handcuffs, Defendant Tyus repeatedly struck Plaintiff's head, perhaps with a hard object.  Plaintiff's evidence shows that he was not resisting, but continued to be "beaten" even after he "was unconscious and in handcuffs, laying face down on the ground."  This evidence comes from the affidavit of inmate King, which is repeated verbatim by inmate Duquette.  There is evidence that although Plaintiff suffered no broken facial bones, he was bleeding profusely.

The use of force in this case, whether *de minimis* injury or not, is the type of force that might be considered by a reasonable jury to be 'repugnant to the conscience of mankind.' "  Plaintiff's evidence suggests that because he had been subdued and was in handcuffs, Defendant Tyus did not act in good faith but, rather, continued to hit Plaintiff solely to cause him harm.  Even though Plaintiff varies his statements as to whether he

Case No. 4:06cv4-SPM/WCS

could identify the officer who grabbed him, the officer who choked him, and the like, Plaintiff has submitted affidavits from other inmates who testify to those facts for Plaintiff. The inmates present their testimony as eyewitnesses to the events, basing their statements on personal observations, and there observations, related under oath, are sufficient to create a genuine dispute of fact.

Viewing the evidence in the light most favorable to Plaintiff, as the Court must do in considering Defendant's motion for summary judgment, Plaintiff has shown that the force used was not needed after Plaintiff was handcuffed on the ground and subdued. Plaintiff has presented sufficient evidence to support his claims and demonstrate a genuine dispute of material fact. Defendant's summary judgment motion must be denied.

Qualified immunity is inappropriate in this case. As noted above, the law was clear well before these events, which took place in 2005, that a "use of force must stop when the need for it to maintain or restore discipline no longer exists." Skrtich v. Thornton, *supra*.

The claims, however, cannot proceed against Defendant in his official capacity. The Eleventh Amendment is an absolute bar to a § 1983 suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacities. Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974). Thus, Plaintiff's claim may proceed against Defendant Tyus only in his individual capacity. Plaintiff concedes that he sues the Defendant in his individual capacity only. Doc. 97, p. 1, n.1.

Case No. 4:06cv4-SPM/WCS

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that the motion for

summary judgment filed by Defendant Tyus, doc. 91, be **DENIED** and the case be

**REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on February 13, 2009.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**